1

2

3

4

5

6

7                  IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   DENA' NENA' HENASH, INC. dba TANANA          No. C 07-633 CW
     CHIEFS CONFERENCE, an Alaska non-
11   profit corporation,                          ORDER GRANTING IN
                                                  PART AND DENYING IN
12           Plaintiff,                           PART DEFENDANT'S
                                                  MOTION TO DISMISS
13      v.                                        AND MOTION TO STRIKE

14   ORACLE CORPORATION, a Delaware
     corporation,
15
             Defendant.
16
     _____/
17

18

19        Defendant Oracle Corporation moves pursuant to Federal Rule of

20   Civil Procedure 12(b)(6) to dismiss the third, fourth, fifth and

21   sixth causes of action in this case and pursuant to Federal Rule of

22   Civil Procedure 12(f) to strike portions of the complaint.

23   Plaintiff Dena' Nena' Henash, Inc., d.b.a. Tanana Chiefs Conference

24   (TCC) opposes the motion.  The matter was taken under submission on

25   the papers.  Having considered all of the papers filed by the

26   parties, the Court grants in part and denies in part Defendant's

27   motion to dismiss and grants in part and denies in part Defendant's

28   motion to strike.

**United States District Court**
For the Northern District of California

BACKGROUND

Plaintiff TCC is a non-profit corporation made up of thirty-seven federally-recognized Alaska Native Tribes and five non-recognized villages and Native groups.  The organization has an annual operating budget of $82 million.  In October, 2003, TCC issued a request for proposal (RFP) for a new software system.  Oracle responded to the RFP in November, 2003.  After several months of negotiation, including several presentations by Oracle sales representatives in Anchorage, Alaska, the parties executed a License and Services Agreement (License Agreement) on February 24, 2004.  On March 17, 2004 the parties signed a separate Services Agreement, in which TCC contracted for Oracle to help it implement the software previously licensed.  Both of the contracts contained integration clauses and limitations on remedies.

Plaintiff alleges that, while the parties were negotiating the terms of the contracts, Defendant represented that "the implementation could be quickly completed and that Oracle's standard software provided the functionality that TCC required."  First Amended Complaint (FAC) ¶ 10(a).  Plaintiff alleges that it agreed to pay Oracle $391,192.20 for the software and $966,302.00 for services, totaling $1,357,494.20.  FAC ¶ 14.  Under the parties' agreement, the software system was supposed to "go live" in November, 2004.  Plaintiff further alleges that, to date, it has paid over $7 million to Oracle in licensing and services but that the system has limited functionality and is not fully implemented.  FAC ¶ 15.

In February, 2006, Plaintiff filed this action in the District

2

of Alaska, alleging six causes of action: (1) breach of contract and express warranty, (2) negligence, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) constructive fraud, (6) violation of the Alaska Unfair Trade Practices Act (AUTPA), and (7) breach of the implied covenant of good faith and fair dealing. Defendant filed a motion to dismiss the action for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), and, in the alternative, to dismiss the third through sixth claims for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Alaska court found that the proper venue for the case was the Northern District of California and exercised its discretion to transfer the case rather than dismiss it. The case was transferred to this Court on December 15, 2006.

Defendant now renews its motion to dismiss the third through sixth claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the FAC.

DISCUSSION

I.   Motion to Dismiss

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

3

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

Defendant moves to dismiss Plaintiff's third through sixth causes of action for failure to state a claim. Defendant argues first that Plaintiff fails to allege fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). Therefore, Defendant contends that Plaintiff's third cause of action for fraudulent misrepresentation and fourth cause of action for negligent misrepresentation, which both sound in fraud, must be dismissed. Further, Defendant argues that Plaintiff's fifth cause of action for constructive fraud fails because such a claim

United States District Court
For the Northern District of California

requires a fiduciary or confidential relationship, which Plaintiff fails to allege.  Next, Defendant argues that California law rather than Alaska law applies to the case.  Therefore, Defendant argues that Plaintiff's sixth cause of action, brought pursuant to the Alaska Unfair Trade Practices Act, must be dismissed.

A.   Failure to Allege Fraud with Particularity

Federal Rule of Civil Procedure 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  If a plaintiff alleges "a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Here, Plaintiff's fraudulent misrepresentation and negligent misrepresentation claims sound in fraud and so must be plead with particularity.

The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Scienter may be averred generally, simply by saying that it existed. <u>See id.</u> at 1547; see Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally").  As to matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy Rule 9(b) if they also state the facts on which the belief is founded.  <u>Wool</u>, 818 F.2d at 1439.  "As with 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice."  <u>Vess</u>, 317 F.3d at 1107-08.

Plaintiff alleges eight[1] misrepresentations "designed to induce TCC to enter into a contract with Oracle."  FAC ¶ 10. Plaintiff also alleges that "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties."  FAC ¶ 22.  Defendant argues that each of Plaintiff's allegations fails to establish a claim of fraud with the requisite particularity because they fail to establish "'the who, what, where, and how' of the misconduct charged," <u>Vess</u>, 317 F.3d at 1106 (<u>quoting</u> <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997), and whether the statements were actually false.

Further, Defendant claims that the statements cannot be proved false or are opinions upon which fraud claims may not be based. "[A]n expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and

_____

[1]One of the alleged misrepresentations relates to a proposed second phase of implementation.  FAC ¶ 10(h).  However, Plaintiff does not raise any claims regarding Phase Two of the implementation.  Therefore, as discussed below, the Court grants Defendant's motion to strike this paragraph from the complaint.

although false, does not amount to actual fraud." <u>Carlson v.</u>
<u>Brickman</u>, 110 Cal. App. 2d 237, 247 (1952) (quoting <u>Stockton v.</u>
<u>Hind</u>, 51 Cal. App. 131, 136 (1921).   Thus, it cannot be grounds for
fraud damages or rescission.   <u>Id.</u>  A "representation is one of
opinion if it expresses only (a) the belief of the maker, without
certainty, as to the existence of a fact; or (b) his judgment as to
the quality, value, authenticity, or other matters of judgment."
<u>Gentry v. eBay</u>, 99 Cal. App. 4th 816, 835 (2002) (quoting Rest. 2d
Torts § 538A) (internal paragraph marks omitted).   "[P]redictions
of future facts are ordinarily considered nonactionable expressions
of opinion."  <u>Richard P. v. Vista Del Mar Child Care Serv.</u>, 106
Cal. App. 3d 860, 865 (1980) (finding prediction that premature
infant would be healthy child to be expression of opinion).   A
seller's mere "puff talk" is also an expression of opinion that is
not actionable as fraud.  <u>Corbett v. Otts</u>, 205 Cal. App. 2d 78, 83
(1962).  Further, a statement must be false when made in order to
support a claim for fraud.  <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082
(9th Cir. 1995) (<u>citing</u> <u>In re GlenFed</u>, 42 F.3d at 1548).

    The FAC states that the alleged misrepresentations "were made
by members of Oracle's sales team and others who attempted to
persuade TCC to use Oracle's software and services" and names eight
Oracle employees who formed the sales team assigned to TCC's
account.  FAC ¶ 11.  Some of the allegedly fraudulent statements
were made in correspondence between the parties, which Plaintiff
cites in the FAC and attaches as exhibits.  The individuals who
made these statements and when they made them is clear from the
documents presented.  In its opposition to the motion to dismiss,

7

Plaintiff clarifies that the other statements were made at presentations that took place during the bidding and negotiation process in Fairbanks.  The Court finds that this information, if added to the complaint, would be sufficient to give Defendant notice of who made the statements and when they made them.

However, the Court finds that all of the statements that Plaintiff alleges are fraudulent are representations of opinion, are too vague, or are incapable of being proven false when made, and therefore cannot support a claim of fraud.  The Court will address each of the allegations in turn.

1.    Paragraph 10(a)

Plaintiff alleges that "Oracle promised that the implementation could be quickly completed and that Oracle's standard software provided the functionality that TCC required.  The November 20, 2003, cover letter to Oracle's written proposal, for example, stated that '[c]ompressed time frames are achievable because Tanana Chiefs Conference's requirements are addressed by Oracle's standard functionality . . . '"  FAC ¶ 10(a).  In this context, the concepts of "quickly completed," "compressed time frames" and "standard functionality" are vague statements incapable of being proven false.  Moreover, the example that Plaintiff provides is in the initial cover letter to Defendant's response to the RFP.  As Defendant points out, the parties negotiated for three months thereafter before entering into the Licensing Agreement and four months before entering into the Services Agreement.  Not only did Defendant provide many more details about its products during the course of the negotiations, but the final agreement was

United States District Court
For the Northern District of California

memorialized in two fully integrated contracts.

        2.    Paragraph 10(b)

    Plaintiff next alleges that "Oracle stated in the management summary accompanying its proposal that it felt 'confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services through the implementation of this solution.'"  FAC ¶ 10(b).  This statement, prefaced by Defendant's statement that it "feel[s] confident" is a clear statement of opinion and therefore is not actionable.

        3.    Paragraph 10(c)

    This paragraph alleges that "in its proposal, and through its representatives, Oracle repeatedly assured TCC that its software could provide all of the functionality needed by TCC.  They stated that Oracle's 'out of the box' software had the required functionality. . . .  They said that no customizations would be necessary."  FAC ¶ 10(c).  In its opposition to the motion to dismiss, Plaintiff identifies Defendant's cover letter to its response to the RFP as the source of this allegedly fraudulent statement.  However, that document provides only that Defendant's proposal was for an "integrated solution for human resources, finance and materials management."  FAC, Exhibit A.  Other documents suggest that using Defendant's products can maximize the number of applications that can be used "out of the box" by using Defendant's products together.  However, this term appears to refer to the ability of each application to communicate with the others without "complex integration points between disparate software applications" rather than an absence of a need for customization of

**United States District Court**
For the Northern District of California

the overall system to the customer's needs.   <u>See</u> FAC, Exhibit B.

Plaintiff may maintain this allegation if it can identify with

particularity a specific statement made by a representative of

Defendant and can demonstrate how the statement was known to be

false when made.

        4.   Paragraph 10(d)

    Plaintiff alleges that "Oracle's representatives falsely

stated that Oracle's HR, Payroll Benefits and Grants modules were

fully integrated."  FAC ¶ 10(d).  As discussed above, it is not

clearly alleged that this statement was false if "fully integrated"

means only that the programs are able to communicate with one

another.

        5.   Paragraph 10(e)

    Plaintiff alleges that "Oracle's representatives repeatedly

assured TCC that the implementation could be fully completed within

90 days, and otherwise provided projected go-live dates that were

not, and could not have been met."  FAC ¶ 10(e).  Plaintiff alleges

that this is false because TCC is still without a fully implemented

system years after the original "go live" date of July 1, 2004.

Opposition at 10.  Again, it appears that Plaintiff misunderstood

Defendant's statements, not that Defendant misinformed Plaintiff.

The exhibits filed in support of the FAC clearly establish that the

work Defendant was doing for Plaintiff was to be completed in

stages and that the initial contracts were for "[i]mplementing the

foundation applications."  FAC, Exhibit A.  Further, the complaint

alleges no representation that the system would be "fully

implemented" on the system's "go live" date.

United States District Court
For the Northern District of California

1
6.    Paragraph 10(f)

2      Here, Plaintiff alleges that "Oracle's representatives falsely

3  stated that it would be able to accomplish the implementation

4  within a specified budget."  FAC ¶ 10(f).  In its opposition to the

5  motion to dismiss, Plaintiff states that it has paid "approximately

6  $5.5 million more than the original budgeted price of

7  $1,357,494.20."  Opposition at 10.  However, the amount Plaintiff

8  quotes is based on the fee estimates included in the contracts for

9  the scope of work included in those contracts.  As stated above, it

10 does not appear that the two agreements signed by the parties were

11 intended to cover the "full implementation" of the system.

12 Further, as Defendant points out, the contracts themselves state

13 that the estimates provided "are intended only to be for your

14 budgeting and Oracle's resource scheduling purposes" and Plaintiff

15 later agreed to additional amendments to the contract.  FAC,

16 Exhibit F.

17
7.    Paragraph 10(g)

18     Finally, Plaintiff argues that "Oracle's representatives made

19 false representations to TCC to induce TCC to agree to a time and

20 materials contract rather than a fixed price contract, including

21 representations that there would be a 'substantial cost savings to

22 TCC' from a time and materials contract and that since the project

23 was a 'fairly predictable, basic flows implementation,' a time and

24 materials contract was in 'TCC's best interest.'"  FAC ¶ 10(g).  It

25 is not clear that this statement represents more than Defendant's

26 opinion at the time that the contracts were signed.  Although it

27 might have proved false, Plaintiff does not allege any facts

28
11

indicating that Defendant knew it was false at the time it was made.  See Fecht, 70 F.3d at 1082 (citing In re GlenFed, 42 F.3d at 1548).

        8.   Paragraph 22

        Plaintiff also alleges that "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties.  Vicki Parrott and Jessica Black repeatedly represented that the implementation was almost complete, when in fact substantial work remained before the software was ready for use.  TCC relied on these representations, which were false, in continuing to work with and purchase services from Oracle."  FAC ¶ 22.  The concept of "almost complete" is too vague to support a claim of fraud, and it is not clear that the statement was knowingly false when made.  Plaintiff's allegation that there remained "substantial work" is itself a subjective statement.

        Because each of Plaintiff's allegations of misrepresentation fails to state with particularity an actionable statement of fact, the Court dismisses without prejudice the third cause of action for fraudulent misrepresentation and the fourth cause of action for negligent misrepresentation.  In order to restate these claims against Defendant, Plaintiff must identify who made specific false statements of fact, when they made them, what they said, why Plaintiffs believe the statements were knowingly false when made, how Plaintiffs will prove that they were knowingly false when made, and how the misrepresentations harmed Plaintiffs.

        B.   Constructive Fraud Claim

        Plaintiff's fifth cause of action alleges, "Due to the trust

12

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

imposed in Oracle by TCC, a fiduciary relationship arose between TCC and Oracle."  FAC ¶ 45.  Therefore, Plaintiff argues, "to the extent that Oracle's representations were made without fraudulent intent, such representations constitute constructive fraud."  Id. Defendant argues that this cause of actions fails as a matter of law, because there is no fiduciary relationship between the parties.  Plaintiff now concedes that it does not have a fiduciary relationship with Oracle, but argues that it has plead sufficient facts to establish a confidential relationship, which can support a claim of constructive fraud.

Under California law, "a relationship need not be a fiduciary one in order to give rise to constructive fraud."  Tyler v. Children's Home Soc'y of Cal., 29 Cal. App. 4th 511, 549 (1995). Rather, California courts have held, "Constructive fraud also applies to nonfiduciary confidential relationships" where "a person with justification places trust and confidence in the integrity and fidelity of another."  Id. (internal quotation omitted).  Plaintiff argues that its allegations--that its staff did not have "technical expertise in computer software design" and that it relied on Defendant's expertise together with Defendant's "representations that it was acting 'in TCC's best interest'"--are sufficient to establish a confidential relationship.  FAC ¶¶ 12; 10(g).

However, the cases Plaintiff cites in its argument that a confidential relationship is sufficient to support a constructive fraud claim are distinguishable.  For example, in Tyler, the California Court of Appeal assumed for the sake of argument that an eighteen-year-old had a confidential relationship with the adoption

13

**United States District Court**
For the Northern District of California

agency that she used to place her baby with an adoptive family. Plaintiff does not cite any case where the California courts have found a confidential relationship between two business negotiating at arm's length, and the Court is aware of none. Indeed, the California Court of Appeal has held, "The vulnerability that is the necessary predicate of a confidential relation, and which the law treats as absolutely essential, usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257, 273 (2003). No such vulnerability exists in this business relationship.

The case Plaintiff cites for the proposition that a party to an arm's length business contract can recover on a claim of constructive fraud under Alaska law is also distinguishable. In Adams v. Adams, 89 P.3d 743 (Alaska 2004), the lessee changed a material term of the lease without notifying the lessor. There, the court found that the lessor "had the obligation" to notify the lessee of the change. Id. at 750. Plaintiff does not allege that Defendant changed any term of the contract without notifying it. Instead, Plaintiff alleges that Defendant's communications with it were misleading.

Plaintiff has not demonstrated that it has stated a claim for constructive fraud under either California or Alaska law. Therefore, the Court dismisses with prejudice Plaintiff's fifth cause of action based on constructive fraud.

C.   Applicable Law

Both of the contracts at issue in this case contain forum

14

selection and choice of law provisions.  The License Agreement provides:

> This agreement is governed by the substantive and procedural laws of California and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts of San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

FAC, Exhibit C.  The Services Agreement provides:

> This agreement is governed by the substantive and procedural laws of the State of Montana and we agree to submit to the exclusive jurisdiction of, and venue in the courts in Alaska County in Fairbanks, Alaska, or San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

FAC, Exhibit E.

The Alaska court determined that venue in this case is controlled by the License Agreement because "TCC has incorporated into each successive cause of action several allegations that constitute breaches of the License Agreement or require resort to the License Agreement to determine if the software delivered under the License Agreement and associated ordering document functioned as represented."  Defendant's Motion, Exhibit 1 at 10.  The Alaska court gave Plaintiff a choice of removing allegations based on the License Agreement from the FAC to preserve the Alaska venue or having the case transferred to this Court.  Plaintiff initially stated that it would file an amended complaint, but later decided not to amend its complaint and requested transfer to this Court.

Defendant argues that the License Agreement is still the controlling agreement and that it requires this Court to apply California law.  Therefore, Defendant argues, Plaintiff's claim

15

under the AUTPA must be dismissed.  Plaintiff counters that the choice of law provision in the License Agreement is unenforceable and that Alaska law should govern the case.  In the alternative, Plaintiff argues that Alaska law is applicable under the choice of law provision in the Services Agreement and therefore that those portions of the AUTPA claim that relate solely to the Services Agreement are valid.

"When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies."  Orange Street Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999).  California law thus determines the effect of the contractual choice of law provision. Under California law, there is a "strong policy favoring enforcement of [choice of law] provisions."  Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65 (1992).  To determine whether the choice of law provision is enforceable, California courts follow the Restatement (Second) of Conflict of Laws § 187, which provides that a choice of law provision will be enforced unless either,

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2).

United States District Court
For the Northern District of California

A.   License Agreement

The License Agreement states that it is governed by California law.  The parties agree that the first requirement under § 187 is satisfied because Defendant has its principal place of business in California.  However, Plaintiff argues that Alaska law should apply because it would apply in the absence of the agreement, because Alaska has a materially greater interest in the controversy, and because the application of California law would be contrary to the fundamental policy underlying Alaska's laws.

Under § 188 of the Restatement, the Court considers five factors to determine the law that would apply in the absence of an agreement: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of Laws § 188(2).  Further, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied."  Id. at § 188(3).  Plaintiff notes that all contract negotiations took place at its office in Alaska, and that the software was installed in its computers in Alaska.  Therefore, Plaintiff argues that Alaska law would apply absent the parties' agreement.

Defendant argues that California law must apply nonetheless, because Alaska does not have a "materially greater interest" in the determination of the issues in the case.  Plaintiff counters that under California law, California's interest in the "prevention of

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

fraud by California residents and corporations against foreign

residents and corporations or vindication of foreign claims" does

not outweigh the Alaska "interest in controlling actions, rights

and liabilities of its domestic corporations and in the uniform

regulation of affairs of business corporations." <u>Riley v.</u>

<u>Fitzgerald</u>, 178 Cal. App. 3d 871, 877 (1986).  However, in <u>Riley</u>,

the California court did not hold that the foreign State's interest

was strong enough to overcome the presumptive reasonableness of a

choice of law provision.  This factor alone is not enough to

warrant the application of Alaska law in violation of the parties'

contractual agreement.

Finally, Defendant argues that California law is not

"fundamentally contrary" to Alaska policy.  Plaintiff points out

that the AUTPA provides, "A waiver by a consumer of the provisions

[of the AUTPA] is contrary to public policy and is unenforceable

and void."  Alaska Stat. § 45.50.542.  Further, Plaintiff argues,

California courts have found that a choice of law provision cannot

override the clear policy enunciated in similar California

statutes.  <u>See, e.g.</u>, <u>America Online, Inc. v. Superior Court</u>, 90

Cal. App. 4th 1 (2001); <u>Hall v. Superior Court</u>, 150 Cal. App. 3d

411 (1983).  However, Plaintiff provides no Alaska authority

establishing that a choice of law provision constitutes an

impermissible waiver of the AUTPA.  California's interpretation of

its own statute does not establish Alaska's policy interest in such

an interpretation of its statute.

Therefore, the Court grants Defendant's motion to dismiss

Plaintiff's sixth cause of action for violation of the AUTPA to the

extent that the claim is based on allegations of misrepresentations related to the License Agreement.

B.    Services Agreement

As stated above, the Services Agreement states that it is to be governed by Montana law.  Plaintiff argues that because Montana has no substantial relationship to either party or the transaction in question, the choice of law provision is invalid.  Therefore, Plaintiff argues that Alaska law controls those claims related to the Services Agreement.  Defendant argues that Plaintiff acknowledged that the case is controlled by the License Agreement when it chose not to amend its complaint and acquiesced in the Alaska court's order transferring the case to this Court. Therefore, Defendant argues that there are no claims controlled by the choice of law provision in the Services Agreement.

However, the Alaska court found that venue in this Court was proper under both agreements.  Further the Alaska court did not find that Plaintiff had not raised any claims under the Services Agreement.  Rather, it clearly stated, "whether the forum selection clause of the Services Agreement applies is irrelevant to the motion at bar." Defendant's Motion, Exhibit 1 at 7.  The Alaska court also found that Plaintiff's inclusion of allegations based on the Services Agreement "creates an additional right to recovery." Id. at 8.

Because Plaintiff raises claims based on the Services Agreement, the Court considers the appropriate law to apply to those claims.  The Court agrees that Montana has no substantial relationship to the parties or the transaction and that the parties

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

have demonstrated no other reasonable basis for their choice.   As discussed above, under § 188 of the Restatement, in the absence of a choice of law provision, Alaska law would apply to the conflict because the contract was negotiated and performed in Alaska. Therefore Plaintiff may bring an AUTPA claim based solely on unfair practices related to the Services Agreement.

Defendant also argues that Plaintiff's AUTPA claim fails because it relies upon the same claims of fraud as the third and fourth causes of action, which Plaintiff failed to plead with particularity as required by Rule 9(b).   As stated above, Plaintiff has failed to plead actionable fraud.   Therefore, the Court dismisses without prejudice Plaintiff's AUTPA claim.   In order to replead this claim, Plaintiff must plead actionable fraud as described above or provide other bases for its AUTPA claim. Further, Plaintiff may plead as AUPTA claims only claims that are based solely on the Services Agreement.

II.   Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a party may move to strike "any redundant, immaterial, impertinent or scandalous matter."   The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues.   Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), reversed on other grounds, 510 U.S. 517 (1994).   Motions to strike are disfavored because they constitute a drastic remedy.   2 Moore's Federal Practice, § 12.37[1] (Matthew Bender 3d ed. 1997); Resolution Trust Corp. v. Vanderweele, 833 F. Supp. 1383, 1387 (N.D. Ind. 1993); Clement v. Am. Greetings Corp., 636 F. Supp. 1326, 1332 (S.D. Cal.

1986).  Decisions to grant motions to strike lie within the discretion of the court.  <u>Moore's Federal Practice</u>, § 12.37[1]; <u>von Bulow v. von Bulow</u>, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987).

Defendant moves to strike three types of allegations from Plaintiff's complaint on the grounds that they are immaterial and impertinent.  Matter is immaterial if it has no essential or important relationship to the claim for relief plead.  <u>Id.</u>  Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case.  <u>Id.</u>  First, Defendant seeks to have stricken as immaterial any allegations regarding Phase Two of the implementation because Plaintiff has not raised any claims related to that phase.  Next, Defendant seeks to have stricken as immaterial allegations regarding the performance of the software, which Plaintiff "has specifically disclaimed."  Motion at 23.  Finally, in the alternative to dismissal of the third and fourth claims for relief, Defendant seeks to have stricken the allegations of misrepresentations that fail to meet the Rule 9(b) pleading standard.  Because the Court grants Defendant's motion to dismiss the third and fourth claims, this portion of the motion to strike is denied as moot.

A.   Allegations regarding Phase Two

Defendant argues, and the Court agrees, that paragraph 10(h) should be stricken from the FAC.  This paragraph, included in Plaintiff's list of alleged "misrepresentations designed to induce TCC to enter into a contract with TCC" states that "Oracle's representatives also made representations regarding a proposed second phase ('Phase Two') of the implementation in which software

21

capabilities would be extended to TCC's tribal members. . . . Because of the problems experienced in the first phase of implementation, TCC has not completed this second phase, and thus reserves the right to assert claims relating to Phase Two." FAC ¶ 10(h).  Plaintiff argues that this allegation is relevant to its fraud claim because it provides a "concrete example of the manner in which Oracle has failed to deliver upon its promises to implement the software in 'compressed time frames' and to have the software implemented in 90 days.  Had Oracle fulfilled these promises, Phase II would have begun."  Opposition at 25.  However, Plaintiff's claims relate only to one set of agreements.  The commencement of work on a second set of agreements, while possibly related to the execution of the first set of agreements, cannot provide the basis for a cause of action related to the first.  The Court grants Defendant's motion to strike paragraph 10(h) from the FAC.

B.   Allegations regarding software performance

Defendant next argues that Plaintiff has disclaimed any allegations regarding the actual performance of the software, citing Plaintiff's earlier arguments before the Alaska court that its claims were based on the Services Agreement rather than the License Agreement.  However, even if those arguments could provide the basis for the motion to strike, they do not directly contradict Plaintiff's allegations.  Plaintiff's admission that the software was not defective does not contradict its allegation that the software did not provide the functionality Plaintiff sought.  The Court denies Defendant's motion to strike these allegations.

22

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

CONCLUSION

2     For the foregoing reasons, the Court GRANTS in part

3 Defendant's motion to dismiss, and GRANTS in part Defendant's

4 motion to strike (Docket No. 4).  The case management conference

5 scheduled for May 17, 2007 is vacated.  Plaintiff may file an

6 amended complaint consistent with this order by June 7, 2007.  Any

7 motion to dismiss shall be filed by June 28, 2007.  The case

8 management conference and a hearing on any motion to dismiss will

9 be held on August 2, 2007 at 2:00 PM.

10     IT IS SO ORDERED.

11

12

13          5/16/07

14 Dated: _____     _____

15                                        CLAUDIA WILKEN
                                          United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28                              23